# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TOMMY CURTIS ECKMAN, | 1:13-cv-01515-GSA-PC |
| Plaintiff, | ORDER GRANTING DEFENDANT JACKSON'S MOTION FOR SUMMARY JUDGMENT |
| v. | (ECF No. 45.) |
| DR. JACKSON, et al., | |
| Defendants. | ORDER FOR CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT JACKSON AND CLOSE CASE |

## I.   BACKGROUND

Plaintiff Tommy Curtis Eckman ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 18, 2013. (ECF No. 1.)  This action is proceeding on Plaintiff's Second Amended Complaint, filed on November 7, 2014, against Defendant Dr. Jackson ("Defendant") for acting with deliberate indifference to Plaintiff's medical needs in violation of the Eighth Amendment.  (ECF No. 20.)

On July 6, 2016, Defendant filed a motion for summary judgment.  Fed. R. Civ. P. 56. (ECF No. 45.)  On July 21, 2016, Plaintiff filed an opposition, and on August 4, 2016 Defendant filed a reply.[1]  (ECF Nos. 47, 48.)  The motion has been submitted upon the record without oral

---

[1] Concurrently with his motion for summary judgment, Defendant served Plaintiff with the requisite notice of the requirements for opposing the motion.  Woods v. Carey, 684 F.3d 934, 939-41 (9th Cir. 2012); Rand v. Rowland, 154 F.3d 952, 960-61 (9th Cir. 1998).  (ECF No. 46.)

argument pursuant to Local Rule 230(*l*), and for the reasons that follow, Defendant's motion shall be granted.

## II.     SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v.

City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The Court determines only whether there is a genuine issue for trial.  Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

### III.   SUMMARY OF ALLEGATIONS IN THE SECOND AMENDED COMPLAINT[2]

The events at issue occurred in 2013-2014 at the California Substance Abuse Treatment Facility and State Prison (SATF) in Corcoran, California, when Plaintiff was incarcerated there. In his amended complaint, Plaintiff alleges that Defendant Jackson, a prison physician, acted with deliberate indifference to his medical needs by failing to properly treat his skin condition, specifically by treating Plaintiff with a cream that was ineffective.

Plaintiff alleges that on or about June 23, 2013, Correctional Officer Lopez noticed blood on the back of his t-shirt and instructed Plaintiff to report to the D Facility Medical Clinic to have the wound cleansed and bandaged.

On that day, and numerous days thereafter, Plaintiff reported to the clinic to have the wound cleaned and bandaged, to no avail.  Plaintiff was repeatedly told that he needed to see the doctor first and was sent back to his cell without any medical care.

From August 8 through August 13, 2013, Plaintiff saw Defendant Jackson, who asked why Plaintiff had not been using the cream.  (ECF No. 20 at 3.)  Plaintiff said that he was using the cream but that it was not working.  Plaintiff explained that it was difficult to reach the affected area and asked for an order for daily cleansing and bandaging by the nursing staff.  Defendant Jackson agreed and told Plaintiff that he would write the order to begin the next day.  However, Plaintiff alleges that "no such care was ever given."  (ECF No. 20 at 3.)

On October 30, 2013, Plaintiff returned to Defendant Jackson.  Defendant Jackson again stated that an order would be written for daily cleaning and bandaging, to begin the next day. Plaintiff asked how he could be certain that nursing staff would follow the order and was told that

---

[2] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. Jones v. Blanas, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible.  The Court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

3

he would need to utilize the health care appeals process to ensure that staff followed the order. Plaintiff alleges that "no such care was ever given." (ECF No. 20 at 3.)

On numerous occasions thereafter Plaintiff attempted to obtain cleansing and bandaging at every health care appointment and/or medication release. However, he was denied every time and was told that "there is no Dr.'s order for what you expect us to do." (ECF No. 20 at 3.) Plaintiff did not receive any care. On each attempt the "relevant" nursing staff threatened to place Plaintiff in a holding cage for disruptive behavior. (ECF No. 20 at 4.)

On March 3, 2014, Plaintiff was called to the clinic and received a cursory look and a wipe with an alcohol pad. He was given instructions to keep it clean and "quit rolling around in the dirt." (ECF No. 20 at 4.) Plaintiff states that until the filing of this complaint this was the only care he received.

Plaintiff alleges that he used health care request forms, verbal communication and health care appeals to receive care, but he was unsuccessful. Plaintiff was given creams on many occasions but the creams failed to provide any relief and seemed to make the wound grow and burn. He states that the wound was as large as 20 inches from left to right and 15 inches from top to bottom.

Plaintiff states that he continues to suffer pain and severe burning sensations, as well as scarring and disfigurement, but he continues to be treated with creams and salves that do not resolve either the openness of the wound or scarring. The creams only inflame the wound. He contends that Defendants were aware of his injury and the lack of treatment but failed to remedy the situation.

Based on these allegations, Plaintiff alleges violations of the Eighth Amendment.

**IV.     LEGAL STANDARD FOR EIGHTH AMENDMENT MEDICAL CARE CLAIMS**

   **A.     Causal Connection Required**

Section 1983 provides a cause of action for the violation of Plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir. 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). "Section 1983 is not itself a source of

substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Crowley v. Nevada ex rel. Nevada Sec'y of State, 678 F.3d 730, 734 (9th Cir. 2012) (citing Graham v. Connor, 490 U.S. 386, 393-94, 109 S.Ct. 1865 (1989)) (internal quotation marks omitted). To proceed with a claim under section 1983, a plaintiff must demonstrate the existence of a link, or causal connection, between each defendant's actions or omissions and a violation of his federal rights. Lemire v. California Dep't of Corr. and Rehab., 726 F.3d 1062, 1074-75 (9th Cir. 2013); Starr v. Baca, 652 F.3d 1202, 1205-08 (9th Cir. 2011).

### 2. Inadequate Medical Care

While the Eighth Amendment of the United States Constitution entitles Plaintiff to medical care, the Eighth Amendment is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).

Defendant does not argue that Plaintiff's skin condition did not present an objectively serious medical need and therefore the Court's focus is limited to whether Defendant acted with deliberate indifference to Plaintiff's skin condition. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted), Wilhelm, 680 F.3d at 1122.

///
///
///

## V.    DEFENDANT'S UNDISPUTED FACTS[3]

1. Plaintiff is an inmate incarcerated within the California Department of Corrections and Rehabilitation (CDCR). At the time of the incidents complained of, he was housed at the Substance Abuse and Treatment Facility State Prison (SATF).

2. Dr. Jackson is a Medical Doctor, who works for the California Department of Corrections and Rehabilitations as a Physician and Surgeon. He worked at SATF until April 21, 2014.

3. Mr. Eckman claims that he suffered open wounds on his back and shoulders that were not properly bandaged, that medications given to him were not effective and burned his body, and that the inadequate care resulted in numerous scars to his back. He alleges that his wounds were left open for a year, and that his complaints of pain were ignored for several months, into 2014.

4. These wounds have since healed but he now has several areas where his skin is much lighter than other areas on his back and shoulders.

5. When deposed, Mr. Eckman denied knowledge of how the open wounds formed, or what caused his scars. He believes that the medication given to him caused these scars as the burning on his skin was severe. He acknowledged receiving care from a specialist via Telemedicine at his prison, and claims that a prescription for lidocaine (recommended by the specialist), helped ease the pain that he suffers. He could not remember this specialist's name in his deposition.

6. Plaintiff's medical records demonstrate that Mr. Eckman received medical care for dermatitis and other complaints, sometimes on nearly a daily basis, from several different healthcare professionals in 2013.

7. Healthcare professionals who examined Mr. Eckman referred him to Dr. Ely, a dermatologist who examined Mr. Eckman by telemedicine and recommended

---

[3] These are the undisputed facts as submitted by Defendant. Plaintiff has not submitted his own undisputed facts or responded specifically to any of Defendant's undisputed facts.

6

medications for Mr. Eckman. Dr. Ely diagnosed Mr. Eckman with Neurotic excoriations and/or Neurodermatitis in September, 2013 and November, 2013. This is a medical condition caused by excessive picking of scabs on a person's body.

8. Mr. Eckman had been advised by Dr. Ely to stop picking his scabs, but he was apparently unable to stop. This recommendation was followed by other doctors, including Dr. Jackson, who examined and treated Mr. Eckman on only one occasion, March 3, 2014.

9. On March 3, 2014, Dr. Jackson examined Mr. Eckman. This was the only occasion where Dr. Jackson examined Mr. Eckman.

10. Dr. Jackson provided treatment for dermatitis that formed on Mr. Eckman's shoulders and back. Mr. Eckman informed Dr. Jackson that the dermatitis formed shortly after he received a tattoo on his shoulder area. Dr. Jackson advised Mr. Eckman to allow his body to heal without picking at the scabs. Dr. Jackson further prescribed medication for Mr. Eckman on March 3, 2014. These prescriptions included: Clindamycin Phosphate 1%, Acetaminophen, calcium (for unrelated complaints), Enlaparil Maleate (for another unrelated complaint) to him.

11. Clindamycin Phosphate is the same medication that Dr. Ely prescribed to Mr. Eckman following a November 27, 2013 examination. While Dr. Ely prescribed Cleocin Gel 2%, the active ingredient in this medication is Clindamycin Phosphate and there are no substantive differences, nor does one work more effectively than the other. The difference between 1% and 2% in the two medications is irrelevant, as the 1% Clindamycin Phosphate applied twice per day works as effectively as the Cleocin Gel, 2%. The Acetaminophen is a non-steroidal anti-inflammatory medication that is commonly used to treat pain. In this particular case, Mr. Eckman appears to

|   |   |   |
|---|---|---|
| 1 |  | have been suffering from a fever in addition to his dermatitis complaints. The |
| 2 |  | Acetaminophen is effective at combatting both a fever and pain. |
| 3 | 12. | Following this March 3, 2014 appointment, Mr. Eckman was seen by a |
| 4 |  | specialist (Dr. Ely) on April 2, 2014 via telemedicine, and his prescriptions |
| 5 |  | were filled at all times through the end of Dr. Jackson's tenure at SATF |
| 6 |  | (April 21, 2014). Dr. Jackson is unaware of any occasions where Mr. Eckman |
| 7 |  | sought an appointment with medical staff that were denied, or where Mr. |
| 8 |  | Eckman specifically sought a meeting with Dr. Jackson that was denied. |
| 9 | 13. | Dr. Jackson was not Mr. Eckman's treating physician in 2013 or on any day |
| 10 |  | other than March 3, 2014. Mr. Eckman was examined by other physicians, |
| 11 |  | nurse practitioners, or physician's assistants on the dates in question. Mr. |
| 12 |  | Eckman appeared to receive appropriate care, as his bandages were changed |
| 13 |  | often (in fact, daily in many instances), his complaints were examined and |
| 14 |  | addressed, and he received appropriate referrals to a specialist as his condition |
| 15 |  | progressed according to Dr. Jackson. |
| 16 | 14. | As a Physician and Surgeon at SATF, Dr. Jackson held no supervisory authority |
| 17 |  | over any of the other healthcare providers and could not reschedule patients to |
| 18 |  | another practitioner. |
| 19 | 15. | Dr. Jackson did not ignore any symptoms of pain, refuse or withhold medical |
| 20 |  | treatment, or provide inferior care to Mr. Eckman. On the one occasion Dr. |
| 21 |  | Jackson did treat Plaintiff, the medical record establishes that Dr. Jackson was |
| 22 |  | not deliberately indifferent to Plaintiff, but provided constitutionally |
| 23 |  | appropriate care. |
| 24 | 16. | Mr. Eckman's diagnosed condition, Neurotic Excoriations (also referred to as |
| 25 |  | Factitial Dermatitis), is caused by excessive picking of scabs and will lead to |
| 26 |  | scars or discoloration of skin if not curtailed. It is an extremely difficult |
| 27 |  | diagnosis to treat effectively, as a patient will cause secondary infections by |
| 28 |  | continuously reopening wounds. Mr. Eckman developed these infections, and |

he did not follow his own specialist's recommendations, nor the recommendations of other healthcare practitioners (including Dr. Jackson) to cease his activity.

## VI.   DEFENDANT'S MOTION

Defendant, Dr. Jackson, moves the Court for summary judgment on the grounds that he was not deliberately indifferent to Plaintiff's medical needs, and that Plaintiff cannot establish that his injuries were caused by any conduct of Dr. Jackson.  Defendant submits as evidence allegations in the Second Amended Complaint, Defendant's declaration, Plaintiff's deposition testimony, Plaintiff's discovery responses, Plaintiff's initial disclosures, and Plaintiff's medical records.

**Deliberate Indifference**

Dr. Jackson declares that he examined Plaintiff only once, on March 3, 2014.  (Jackson Dec., ECF No. 45-4 ¶2.)  Plaintiff sought treatment for dermatitis that formed on his shoulders and back.  (Id.)  Plaintiff informed Dr. Jackson that the dermatitis formed shortly after he received a tattoo on his shoulder area.  (Id.)  Plaintiff had already seen other health care practitioners at SATF and a dermatologist named P. Haines Ely, M.D. before seeing Dr. Jackson.  (Id. ¶3.)  Dr. Ely saw Plaintiff via telemedicine and diagnosed him with Neurotic excoriation and/or Neurodermatitis in 2013.  (Id.)  This is a medical condition caused by excessive picking of scabs on a person's body.  (Id.)  Both Dr. Ely and Dr. Jackson advised Plaintiff to stop picking at his scabs.  (Id.)  Dr. Jackson prescribed medications for Plaintiff, including Clindamycin Phosphate 1%, Acetaminophen, calcium (for unrelated complaints), and Enlaparil Maleate (for another unrelated complaint).  (Id. ¶4.)  The Clindamycin Phosphate is the same medication that Dr. Ely prescribed for Plaintiff following a November 27, 2013 examination.  (Id.)  Plaintiff was seen by a specialist on April 2, 2014 via telemedicine, and his prescriptions were filled at all times through the end of Dr. Jackson's tenure at SATF (April 21, 2014).  Dr. Jackson is unaware of any occasions where Plaintiff sought an appointment with medical staff that were denied by Dr. Jackson, or where Plaintiff specifically sought a meeting with Dr. Jackson that was denied.  (Id. ¶6.)  Dr. Jackson did not "shuffle Plaintiff" off to a nurse practitioner or physician's assistant when he sought medical

care, because Dr. Jackson had no authority to do so. (Id. ¶7.) Dr. Jackson held no supervisory authority over any of the other healthcare providers and could not reschedule patients to another practitioner. (Id.) According to Plaintiff's medical records, other physicians did see Plaintiff, and several competent nurse practitioners also examined him for his dermatitis complaints. (Id.) Dr, Jackson treated Plaintiff's symptoms in accordance with medical guidelines and the recommendations of a dermatology specialist. (Id.) He did not ignore any symptoms of pain, refuse or withhold medical treatment, or provide inferior care to him. (Id. ¶8.) Dr. Jackson does not believe that any application of Clindamycin Phosphate caused scarring to Plaintiff. (Id.) Plaintiff's diagnosed condition is an extremely difficult diagnosis to treat effectively, as a patient will cause secondary infections by continually reopening wounds. (Id.) Plaintiff developed infections and did not follow his own specialist's recommendations, nor the recommendations of other healthcare practitioner (including Dr. Jackson) to cease his activity. (Id.)

Dr. Ely's notes from Plaintiff's September 25, 2013 visit state that "On the left shoulder, there are numerous hypopigmented scars from previous excorations." (Exh. B to Jackson Decl, ECF No. 45-2 at 85.) Dr. Ely made an assessment of "Neurotic excoriations secondarily infected," and stated that it is a "very difficult condition to treat." (Id.) After Plaintiff's November 27, 2013 visit, Dr. Ely noted that "Since the Cleocin gel seems to abate his itching and urge to scratch, I told him to continue using it. I also had a long talk with him about stopping picking at his skin." (Id. at 86.) Dr. Ely also saw Plaintiff for his skin condition on April 2, 2014. (Id. at 87.) Pharmacy records of Plaintiff's medications show that all of the prescriptions for medications ordered by Dr. Jackson were not set to expire until after the end of Dr. Jackson's tenure at SATF (April 21, 2014). (Id. at 88.) Plaintiff's medical records demonstrate that Plaintiff received medical care for dermatitis and other complaints, sometimes on nearly a daily basis, from several healthcare professionals in 2013. (Exh. A to Jackson Decl., ECF 45-2 at 18-43.)

In his deposition, Plaintiff stated that he did not know how the open wounds formed or what caused his scars. (Depo., ECF No. 45-24-2 at 112.) Plaintiff stated that he believes the medication given to him caused the scars, because the burning on his skin was severe. (Id. at 110.)

## VII. PLAINTIFF'S OPPOSITION

Plaintiff's very brief opposition fails to set forth any evidence raising any triable issues of fact. With respect to Defendant's exhibits, Plaintiff asserts, without giving examples or offering supporting evidence, that Defendant withheld evidence, that there are false statements in his deposition, and that some of the records are false. However, Plaintiff asserts that "the medical records speak for themselves." (ECF No. 47 at 2:20-21.) The Court considers Plaintiff's assertions in the Second Amended Complaint and the excerpts from Plaintiff's May 26, 2016 deposition testimony submitted by Defendant, to the extent that they contain admissible evidence.

## VIII. DISCUSSION

The Court finds no genuine issues of material fact for trial. At issue is the medical care and treatment given to Plaintiff for his skin condition by Defendant Jackson. To the extent that Plaintiff's claim against Defendant arises out of Plaintiff's disagreement with the course of treatment prescribed by Defendant to address Plaintiff's skin condition, a mere difference of opinion between Plaintiff and Defendant regarding medical treatment does not give rise to a claim under section 1983. Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122-23; Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). Rather, Plaintiff must show that the course of treatment chosen was medically unacceptable under the circumstances and that it was chosen in conscious disregard of an excessive risk to Plaintiff's health. Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (quotation marks omitted); accord Snow, 681 F.3d at 987-88. Plaintiff has not done so. Plaintiff alleges that he suffered open wounds on his back and shoulders that were not properly bandaged, and that the medications he was given were not effective and burned his body, resulting in scarring on his back. (SAC at 3 ¶¶11-12.) However, Plaintiff offers no evidence except his own opinion that the treatment was medically unacceptable under the circumstances, and as a lay witness, Plaintiff is not qualified to render an opinion that Defendant should have considered other classes or types of medication or treatment, or that Defendant's failure to do so was in contravention of acceptable medical standards. Fed. R. Evid. 701, 702. Defendant's evidence shows that Defendant prescribed Clindamycin Phosphate 1% gel for Plaintiff's skin condition, which is the same medication prescribed by Dr. Ely, a dermatologist, following an

examination of Plaintiff on November 27, 2013. (Jackson Decl., ECF No. 45-3 at 2 ¶4.) Thus, there is no admissible evidence that the course of treatment by Defendant was medically unacceptable.

Plaintiff's claim that Defendant acted with deliberate indifference to his serious medical needs also fails. Plaintiff alleges that when he told Defendant the cream was not working and explained that it was difficult to reach the affected area, Defendant agreed with Plaintiff that he should have an order for daily cleaning and bandaging by the nursing staff, and told Plaintiff he would write the order. (SAC, ECF No. 20 ¶11.) Plaintiff alleges that he did not receive any such care, and when Plaintiff notified Defendant, Defendant said he would write an order to begin the next day. (Id.) Plaintiff states that Defendant advised him to use the health care appeals process if nursing staff did not follow the order. (Id. ¶12.) Plaintiff alleges that he never received such care. (Id.) Even assuming that Defendant's conduct as alleged by Plaintiff was true, it does not amount to deliberate indifference. Most of Plaintiff's allegations of medical care in the Second Amended Complaint are against healthcare staff at SATF but do not specify any conduct by Dr. Jackson. In his deposition, Plaintiff stated that Dr. Jackson neglected him and told other practitioners to take care of Plaintiff. (Depo., Exh D to Jackson Decl., ECF No. 45-2 at 110-11.) However, Plaintiff has not shown that Defendant acted unreasonably and consciously disregarded a known risk of substantial harm to Plaintiff's health.

Defendant has met his burden of setting forth evidence that there is no genuine issue of material fact for trial, which shifts the burden to Plaintiff to submit admissible evidence showing the existence of genuine issues for trial. Plaintiff has not done so.

In sum, the record demonstrates that Plaintiff's complaints about his skin condition were appropriately addressed by Defendant. Plaintiff's mere disagreement with the course of treatment chosen by Defendant does not support a claim under the Eighth Amendment, and Defendant is entitled to summary judgment. Snow, 681 F.3d 987-88.

### IX. CONCLUSION

Defendant has submitted evidence that he did not act with deliberate indifference in treating Plaintiff's skin condition, and Plaintiff did not produce any evidence in response that

created a disputed issue of material fact. Accordingly, Defendant is entitled to judgment on Plaintiff's Eighth Amendment claim against him, and Defendant's motion for summary judgment, filed on July 6, 2016, shall be granted.

Accordingly, based on the foregoing, IT IS HEREBY ORDERED that:

1. Defendant Jackson's motion for summary judgment, filed on July 6, 2016, is GRANTED; and

2. The Clerk is directed to enter judgment in favor of Defendant Jackson and close this case.

IT IS SO ORDERED.

Dated:   **November 12, 2016**                              **/s/ Gary S. Austin**
                                                         UNITED STATES MAGISTRATE JUDGE